**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:05-CR-153-BES-GWF |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| RICARDO SALINAS, | ) | |
| Defendant. | ) | |
| _____ | ) | |

On February 1, 2006, the Magistrate Judge held an evidentiary hearing on Defendant's Motion to Suppress (#13). Subsequently, on February 7, 2006, the Magistrate Judge entered his Report and Recommendation (#33), in which he determined that Defendant's Motion to Suppress (#13) should be denied. Currently before this Court is Defendant's Objections to the Magistrate Judge's Report and Recommendation (#38), which was filed on March 20, 2006. The Government filed its Response to Defendant's Objections (#39) on March 21, 2006. For the following reasons, this Court accepts the Magistrate Judge's Recommendation (#13) in part and denies Defendant's Motion to Suppress (#13).

**I. BACKGROUND**

On January 16, 2005, at approximately 5:22 p.m., two Las Vegas police officers, Detective Kinch and Detective Yannis, were conducting a routine gang enforcement and suppression patrol near Sierra Point Apartments. During this patrol, the detectives stopped

1 their unmarked patrol car in an alley where they observed several African-American males who
2 were dressed in gang attire. The detectives then observed a Hispanic male, Ricardo Salinas
3 ("Defendant"), walking in the general direction of the African-American males. Detective Kinch
4 testified that Defendant's style of dress roused his suspicion because it was consistent with
5 local Hispanic gang attire. Further, Defendant Kinch testified that he suspected Defendant
6 might be armed because he was wearing a coat that could conceal the presence of a weapon.

7 Detective Kinch then exited the unmarked patrol car and asked Defendant if he could
8 speak with him. Defendant, who was approximately 15 feet away from Detective Kinch,
9 responded by asking "what did I do wrong?" Detective Kinch replied that he did not do anything
10 wrong. Detective Kinch testified that his motive for approaching Defendant was to inquire
11 whether Defendant was affiliated with a gang and whether he was a resident of the apartment
12 complex.[1] Further, Detective Kinch testified that he approached Defendant partly because he
13 wanted to deter any possible violence between Defendant and the African-American gang
14 members who were in the vicinity.

15 Detective Kinch approached Defendant, and, as he drew near, he noticed a shiny metal
16 object protruding out of the chest pocket of Defendant's overalls. Detective Kinch testified that
17 he initially suspected that this object was an ice pick. Detective Kinch removed the object from
18 Defendant's pocket and confirmed that his initial suspicion was correct. After removing the ice
19 pick, Detective Kinch attempted to perform a pat-down search on Defendant to determine
20 whether he was carrying anything else that could be used as a weapon. Defendant then
21 backed away and a struggle ensued between Detective Kinch and Defendant. During the
22 struggle, Detective Kinch attempted to gain physical control over Defendant by grasping his
23 coat sleeve. Detective Kinch also issued verbal commands, instructing Defendant to stop
24 moving; however, Defendant continued to struggle. Detective Kinch then drew his taser and
25 twice warned Defendant that he would use the taser if Defendant resisted further. Defendant
26 failed to comply, and Detective Kinch ultimately used the taser. Nevertheless, the taser did not

27

28 [1] By agreement, Sierra Point Apartments permits Metro police officers to remove non-residents from the property.

2

subdue Defendant, and he slipped out of his coat, breaking free from Detective Kinch's grasp.

After Defendant's coat slipped off, Detective Kinch noticed the handle of a firearm protruding from Defendant's overalls. Defendant fled and the detectives lost sight of him. Shortly thereafter, the detectives encountered a woman who told them that Defendant was in the apartment unit that she had just exited. The detectives found Defendant in the apartment and placed him under arrest. Subsequently, Defendant told officers that located inside the apartment was his weapon, a sawed-off shotgun. The officers then located and secured the weapon.

As a result of the foregoing events, the Government filed an Indictment (#1) on May 11, 2005, charging Defendant with Possession of a Firearm by a Convicted Felon; Possession of an Unregistered Firearm; and Forfeiture.

## II. ANALYSIS

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2005). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to the magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."[2] Defendant filed timely objections to the Magistrate Judge's Findings and Recommendation (#33); accordingly, this Court conducts a de novo review pursuant to 28 U.S.C. § 636(b)(1).

Defendant objects to the following findings in the Magistrate Judge's Report and Recommendation (#33): (1) before the ice pick was found, the encounter between Defendant and Detective Kinch, was consensual and required neither reasonable suspicion nor probable cause; (2) the ice pick was a concealed weapon but nevertheless in plain view of Detective Kinch, which gave him probable cause to arrest Defendant; and (3) the ice pick is a weapon

---

[2] Unless otherwise ordered, a party must serve and file an objection within 10 days after being served with the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1) (2005).

3

1  as defined in the concealed weapons statute. (Objection (#38) at 2).[3] In response, the
2  Government argues that the Magistrate Judge correctly found that the initial encounter
3  between Detective Kinch and Defendant was consensual. Further, the Government argues
4  that this Court need not reach the concealed weapon issues because, after locating the ice
5  pick, Detective Kinch had reasonable suspicion to conduct a pat-down of Defendant. This
6  Court has conducted a de novo review of those portions of the Report and Recommendation
7  (#33) to which Defendant objects and agrees with the Government. Thus, for the following
8  reasons, this Court accepts the Magistrate Judge's Report and Recommendation (#33) in part
9  and denies Defendant's Motion to Suppress (#13).

10  There are three categories of stops under the Fourth Amendment. First, an officer may
11  make a "consensual" stop by approaching a citizen to ask him or her questions so long as that
12  citizen recognizes that he or she is free to leave. Florida v. Bostick, 501 U.S. 429, 434 (1991)
13  (stating that "[M]ere police questioning does not constitute a seizure."). Such consensual
14  encounters need not be supported by any suspicion and do not constitute a seizure under the
15  Fourth Amendment. Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir. 1993). Second, an
16  officer may conduct a brief investigatory stop if such a stop is justified by the officer's
17  reasonable suspicion that the citizen is engaged in criminal activity. See Terry v. Ohio, 392
18  U.S. 1, 20–22 (1968). Finally, an officer may arrest a citizen if the officer has probable cause.
19  See e.g., Adams v. Williams, 405 U.S. 143, 148 (1972).

20  Defendant argues that the Magistrate Judge erred when he found that the initial
21  encounter between Detective Kinch and Defendant was consensual. Although Defendant
22  agrees that a consensual stop is not a seizure under the Fourth Amendment, he argues that
23  the circumstances in this case were such that he reasonably believed that he was not free to
24  ignore Detective Kinch's request to ask him questions. Defendant argues that the stop was
25  therefore not consensual, but was instead an investigatory stop for which reasonable suspicion
26  was required. This Court disagrees.

---

[3] Defendant does not object to the factual findings of the Magistrate Judge but instead objects to the manner in which the Magistrate Judge applied the law to the facts of this case.

4

An encounter is consensual "[s]o long as a reasonable person would feel free to disregard the police and go about his business . . . ." Bostick, 501 U.S. at 434. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [this Court] conclude that a 'seizure' has occurred." Id. Thus, a consensual encounter evolves into an investigatory stop, requiring reasonable suspicion, if "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Desyllas v. Bernstine, 351 F.3d 934, 940 (9th Cir. 2003) (quoting United States v. Kim, 25 F.3d 1426, 1430 (9th Cir. 1994)); see also United States v. Summers, 268 F.3d 683, 686 (9th Cir. 2001). The Ninth Circuit has enumerated five factors that courts should consider to determine "whether a reasonable person would have felt 'at liberty to ignore the police presence and go about his business.'" United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004) (quoting Orhorhaghe v. INS, 38 F.3d 488, 494 (9th Cir. 1994)). These factors are as follows: (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's officious or authoritative manner would imply that compliance would be compelled; and (5) whether the officers advised the detainee of his right to terminate the encounter. Id. Applying these factors, this Court finds that the Magistrate Judge correctly determined that the initial encounter between Detective Kinch and Defendant was consensual.

In this case, only Detective Kinch approached Defendant during the initial encounter—before the ice pick was found. See (Objection (#38) at 3) (stating that Defendant Yannis remained near the patrol car). Although both officers were wearing their guns, they did not brandish them during the initial encounter with Defendant. Id. The encounter occurred in an alley next to an apartment complex.[4] Id. Further, there is no evidence that Detective Kinch spoke to Defendant in an authoritative tone. When Detective Kinch approached, Defendant asked what he had done wrong, and Detective Kinch replied "nothing." (Objection (#38) at 3).

---

[4] Although an alley could be considered a private setting in some circumstances, Detective Kinch testified that other people were in the area. (Findings and Recommendation (#33) at 8). Further, in his report, Detective Kinch noted that there were numerous people in the courtyard of the apartment complex. (Motion (#13), Ex. A at 4). Accordingly, this Court finds that the encounter between Detective Kinch and Defendant occurred in a public setting.

5

This exchange would not indicate to a reasonable person that he was not free to leave. Instead, a reasonable person would conclude that because the officer told him that he had done nothing wrong, he was free to leave. Finally, although neither Detective Kinch nor Detective Yannis advised Defendant of his right to terminate the encounter, they never attempted to block his path, and there was no evidence that Defendant attempted to terminate the encounter. See United States v. Cormier, 220 F.3d 1103, 1110 (9th Cir. 2000) (stating that "[defendant] failed to present any evidence that he ever attempted to terminate the encounter with [the officer] or that he was not entitled to do so."). These factors support the Magistrate Judge's finding that the initial encounter between Detective Kinch and Defendant was consensual; accordingly, this Court agrees with that finding.

After finding that the initial encounter was consensual, the Magistrate Judge also found that the discovery of the ice pick "standing alone, and certainly in combination with other circumstances observed by the officer, constituted reasonable suspicion that Defendant was engaged or about to engage in criminal activity or was armed, thereby justifying Detective Kinch's attempt to conduct a precautionary pat-down search of Defendant." (Findings and Recommendation (#33) at 14). Defendant never explicitly objects to this particular finding.[5] Instead, Defendant focuses on the nature of the encounter before Detective Kinch noticed the ice pick and argues that this initial encounter was an unlawful seizure and all other evidence obtained after this initial encounter should be suppressed as fruit of the poisonous tree. (Objection (#38) at 2–4). Defendant then proceeds to analyze whether Defendant's possession of the ice pick constituted a violation of Nevada's concealed weapons statute, Nev. Rev. Stat. § 202.350.[6] (Objection (#38) at 2). This Court need not address the concealed

---

[5] Because Defendant did not explicitly object, this Court is not required to review this portion of the Magistrate Judge's Recommendation (#33). See United States v. Reyna-Tapia, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing portions of a report and recommendation to which no objections were made); see also Schmidt v. Johnstone, 263 F.Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in Reyna-Tapia as adopting the view that district courts are not required to review "any issue that is not the subject of an objection.").

[6] Defendant adresses this issue because the Magistrate Judge alternatively found that Defendant's possession of the ice pick was a violation of the concealed weapons statute and that Detective Kinch could have conducted a search incident to an arrest based on this offense. (Findings and Recommendation (#33) at 14).

6

1  weapon issue, however, because Detective Kinch's attempt to search Defendant after finding
2  the ice pick was constitutionally permissible.
3       It is a well-settled principle that law enforcement officers "must be allowed to protect
4  themselves before a potential threat of danger develops into a tragedy." United States v.
5  Flippin, 924 F.2d 163, 166 (9th Cir. 1991). In Terry, the Supreme Court recognized the
6  following:

> "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry, 392 U.S. at 24.

11  Under this principle, an officer may frisk a party if (1) the officer was rightfully in the presence
12  of the party frisked so as to be endangered if the party was armed, and (2) whether the officer
13  had a reasonable suspicion that the party to be frisked was armed and dangerous. Brown v.
14  Texas, 443 U.S. 47, 50–53 (1979); see also, Flippin, 924 F.2d at 165.  This Court has already
15  found that the initial encounter between Detective Kinch and Defendant was consensual;
16  therefore, Defendant Kinch was rightfully in the presence of Defendant. Flippin, 924 F.2d at
17  165 (finding that the officer was rightfully in the presence of a party after the party gave the
18  officer consent to search her house). Thus, the only remaining inquiry is whether Detective
19  Kinch's attempted frisk was justified by a reasonable suspicion. Id.
20       Reasonable suspicion is "a reasonable belief based on specific and articulable facts."
21  Maryland v. Buie, 494 U.S. 325, 337 (1990); see also United States v. Colin, 314 F.3d 439,
22  442 (9th Cir. 2002). Further, a frisk is justified "if a reasonably prudent person in [the officer's
23  circumstances] would have been warranted in the belief that his safety [or the safety of others]
24  was in danger." United States v. Garcia, 909 F.2d 389, 391 (9th Cir. 1990) (citing United
25  States v. Thomas, 844 F.2d 678, 683 (9th Cir. 1988)); see also Terry, 392 U.S. at 27. The
26  suspect's behavior, including furtive and abrupt movements, is a significant factor in making
27  this determination. Flippin, 924 F.2d at 166.
28  ///

7

1    In this case, the detectives were patrolling an area known for gang activity and violent
2 crime. Detective Kinch testified that the area was primarily frequented by gang members who
3 are generally armed. The detectives noticed Defendant, a Hispanic male, who, according to
4 Detective Kinch, was dressed in a manner that was consistent with the appearance of
5 Hispanic gang members. Detective Kinch testified that it was unusual for Hispanic gang
6 members to be in that area.  Further, Detective Kinch testified that he suspected Defendant
7 might be armed and that he was concerned that violence could potentially ensue between
8 Defendant and the African-American gang members who were in the vicinity.

9    While approaching Defendant, Detective Kinch noticed what he believed to be an ice
10 pick protruding from Defendant's front chest pocket. After Detective Kinch removed what was
11 indeed an ice pick, he placed his hand on Defendant's arm and attempted to initiate a pat-
12 down search to ensure that Defendant had no other weapons on his person. Defendant
13 responded by taking an aggressive stance and by struggling with Detective Kinch before
14 fleeing. Considering these circumstances, this Court finds that Detective Kinch had a
15 reasonable suspicion that Defendant was armed and that Detective Kinch reasonably believed
16 that his safety or the safety of others was in danger, thereby justifying his attempted pat-down
17 of Defendant. Accordingly, Detective Kinch's actions were constitutionally permissible under
18 the Fourth Amendment.

19    This Court has already found that the initial encounter between Detective Kinch and
20 Defendant was consensual and that Detective Kinch's attempted pat-down of Defendant was
21 constitutionally permissible; therefore, it need not reach the issue of whether, after he found
22 the ice pick, Detective Kinch had probable cause to arrest Defendant for a violation of
23 Nevada's concealed weapons statute. Thus, because the detectives actions did not constitute
24 an illegal search under the Fourth Amendment, the evidence seized as a result of their
25 encounter with Defendant is not suppressed.

26 ///
27 ///
28 ///

### III. CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED that this Court accepts, in part, the Magistrate Judge's Report and Recommendation (#13).

IT IS FURTHER ORDERED that Defendant's Motion to Suppress (#13) is denied.

DATED: This 10th day of April, 2006.

_____
UNITED STATES DISTRICT JUDGE